UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

RACHEL WAYNE,

    Plaintiff,

v.

CITY OF LAKE STATION, CITY OF
LAKE STATION POLICE DEPARTMENT,
DETECTIVE GLENN GULLEY, and
UNKNOWN OFFICERS OF THE LAKE
STATION POLICE DEPARTMENT,
individually, jointly and severally,

    Defendants.

CAUSE NO.: 2:17-CV-476-TLS-JEM

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Partial Motion to Dismiss [ECF No. 26], filed on May 16, 2018. For the reasons stated below, this Motion is GRANTED IN PART and DENIED IN PART.

**PROCEDURAL BACKGROUND**

On December 26, 2017, Plaintiff Rachel Wayne filed her Complaint [ECF No. 1] against Defendants City of Lake Station, City of Lake Station Police Department, Detective Glenn Gulley, and unknown officers of the Lake Station Police Department. On May 4, 2018, the Plaintiff filed an Amended Complaint against the same Defendants, alleging claims of wrongful arrest or imprisonment in violation of the United States Constitution and the laws of Indiana (Count I), a *Monell* claim under 42 U.S.C. § 1983 (Count II), illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 (Count III), assault and battery by the officers (Count IV), assault by the City of Lake Station under a theory of respondeat superior (Count V), intentional infliction of emotional

distress against Detective Gulley and the unknown police officers of the Lake Station Police Department (Count VI), intentional infliction of emotional distress against the City of Lake Station based on respondeat superior (Count VII), illegal conspiracy (Count VIII), negligence for personal injuries (Count IX), and defamation (Count X).

On May 16, 2018, Defendants filed the instant Motion to Dismiss [ECF No. 26], seeking dismissal in part of the Amended Complaint based on failure to state a claim, qualified immunity, and the immunities afforded by the Indiana Tort Claims Act. The motion is fully briefed and ripe for ruling.

## LEGAL STANDARD

"A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and accepts as true all reasonable inferences that may be drawn from the allegations. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bonnstetter*, 811 F.3d at 973 (citing *Twombly*, 550 U.S. at 555).

## FACTUAL BACKGROUND

The following allegations are taken from the Plaintiff's Amended Complaint. "Plaintiff, Rachel Wayne (at the time of these events, Rachel Cundiff), lawfully owned numerous animals that she either rescued or otherwise took in to care for, including, but not limited to, cats, dogs and racoons. The animals were kept at her home in Lake Station, Indiana." Am. Compl. ¶ 13, ECF No. 23. "Plaintiff had all necessary documentation and permits to lawfully house and care for the animals." *Id.* ¶ 14. "On or around December 23, 2015, a disgruntled customer who purchased a kitten from Plaintiff contacted the Lake Station Police Department and filed a false police report with Officer Baldazo stating that the cat was abused and/or neglected." *Id.* ¶ 15. "Officer Baldazo did not conduct an investigation into the validity of the customer's complaint." *Id.* ¶ 16. "The customer provided Detective Kevin Garber with a written statement and nonething [sic] more, on or around January 14, 2016. Detective Garber received the written statement from the disgruntled customer but did not interrogate or question her regarding her allegations." *Id.* ¶ 17. "Detective Garber passed the uncorroborated written statement on to Detective Glenn Gulley." *Id.* ¶ 18.

"Based on the uncorroborated written statement, Detective Glen Gulley typed up and signed a sworn affidavit for a search warrant on January 21, 2016 wherein he cited the interview between the customer and Officer Baldazo and the written [statement] as the basis for [the] search warrant." *Id.* ¶ 19. Detective Gulley "made no attempt to determine the truthfulness of the allegations contained therein before seeking and obtaining a search warrant." *Id.* ¶ 22. "The information in the affidavit for [the] search warrant was uncorroborated, uninvestigated and some of which was untrue." *Id.* ¶ 21. She also alleges that the officers acted "knowingly, intentionally or with reckless disregard of the truth" and that they did not have any credible

3

evidence that she "committed or was about to commit a crime." *Id.* ¶ 61. Further, Plaintiff alleges that "Defendants provided false testimony in their Affidavit for Search Warrant, knowing said testimony was false." *Id.* ¶ 62.

"On January 21, 2016, a search warrant was issued . . . by the Lake County Court judge based soley [sic] on the uncorroborated and uninvestigated sworn affidavit of Detective Gulley." *Id.* ¶ 23. "At the time that he presented the sworn affidavit to the Lake Station Judge for signature, Gulley had no objectively reasonable basis to believe that a search warrant was needed or necessary." *Id.* ¶ 20. "On January 21, 2016, the Lake Station Police Department executed the defective search warrant on the home of the Plaintiff." *Id.* ¶ 24. "The search warrant authorized the Defendant Lake Station Police Officers to seize Animals including but not limited to canines and felines[.]" *Id.* ¶ 26. "Pursuant to the legally deficient search warrant, defendant Lake Station Police Department seized approximately 27 animals from Plaintiff's home." *Id.* ¶ 25. The Lake State Police "did not attempt to determine which, if any, of the animals were abused or neglected, as required by the plain language of the search warrant, before seizing them from the Plaintiff." *Id.* ¶ 27. Even after the animals had been seized, the Defendants did not evaluate whether any of the animals were suffering from abuse or neglect. *Id.* ¶ 28. "Defendant Lake Station Police Department placed the animals in various local animal shelters, including the Hobart Humane Society." *Id.* ¶ 29.

"Defendant Lake Station Police Department arrested Plaintiff based solely on the allegations of the disgruntled purchaser of a kitten." *Id.* ¶ 35. "Plaintiff was charged with forgery and animal neglect." *Id.* ¶ 37. "Plaintiff's then counsel filed a Motion to Suppress Search Warrant and a hearing was held on . . . October 13, 2016." *Id.* ¶ 39. Detective Gulley testified "that neither he nor Garber questioned the customer in any fashion regarding her alleged

4

complaint nor did either conduct any investigation into her complaints to determine if they were true." *Id.* ¶ 42. "Gulley also testified that neither he nor any other detective in the Lake Station Police Department called the customer to verify the truthfulness of her allegations of animal neglect." *Id.* ¶ 44. "Additionally, Gulley testified . . . that he had no evidence of animal neglect other than the written, unverified statement of the customer when he asked the judge for an [sic] search warrant." *Id.* ¶ 46. Detective Gulley "stated in his sworn affidavit that he investigated the matters stated therein although he knew he had not conducted an investigation." *Id.* ¶ 48. "The trial judge granted Plaintiff's Motion to Suppress based on Gulley's testimony." *Id.* ¶ 50. After the motion to suppress was granted, "the charges against Plaintiff were dropped by the Lake County Prosecutor's office." *Id.* ¶ 51.

Additionally, in an attempt to prevent the loss of her animals, the Plaintiff "filed a Verified Petition for Emergency Temporary Restraining Order on February 2, 2016." *Id.* ¶ 31. Prior to a hearing on this petition, the Hobart Humane Society euthanized eleven of her cats and other animals were given away to new owners. *Id.* ¶¶ 33–34.

## ANALYSIS

In their Partial Motion to Dismiss, the Defendants seek (1) dismissal of the constitutional civil rights claims brought in Counts I and III; (2) dismissal of the conspiracy claim in Count VIII; (3) dismissal of Defendant Detective Gulley pursuant to the Indiana Tort Claims Act; (4) dismissal of the Lake Station Police Department as an improperly named defendant; (5) dismissal of the respondeat superior claim for assault and battery in Counts V and VII; and (6) dismissal of the Plaintiff's procedural due process claim. The Defendants do not seek dismissal of the claims in Counts II, IV, VI, VII, IX, or X. For the reasons stated below, this Motion is granted in part and denied in part.

5

A.     **Failure to State a Claim—Civil Rights and False Arrest Claims**

The Defendants argue that the Plaintiff failed to state a claim for wrongful arrest or imprisonment (Count I) and illegal search and seizure (Count III).[1] The Court rejects this argument.

To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "An officer violates the Fourth Amendment if he intentionally or recklessly includes false statements in a warrant application and those false statements were material to a finding of probable cause." *Rainsberger v. Benner*, 913 F.3d 640, 647 (2019); *see also United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) ("Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime."). An arrest without probable cause also violates the Fourth Amendment. *Fox v. Hayes*, 600 F.3d 819, 832 (7th Cir. 2010); *see also Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) ("There is probable cause to arrest if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime."). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 49–50.

Under Indiana law, an individual commits forgery when, with the intent to defraud, she makes, utters, or possesses a written instrument in such a manner that it purports to have been made (1) by another person, (2) at another time, (3) with different provisions, or (4) by authority

---

[1] The Defendants have not argued that the Plaintiff failed to state a claim for *Monell* liability alleged in Count II.

of one who did not give authority. *Bocanegra v. State*, 969 N.E.2d 1026, 1028 (Ind. Ct. App. 2012) (citing Ind. Code § 35-43-5-2(d)). Furthermore, it is unlawful to recklessly, knowingly, or intentionally neglect a vertebrate animal in one's custody. *Miller v. State*, 952 N.E.2d 292, 294 (Ind. Ct. App. 2011) (citing Ind. Code § 35-46-3-7(a)); *see also* Ind. Code § 35-46-3-0.5(5) (defining animal neglect).

In this case, based upon the allegations in the Amended Complaint, the Plaintiff had all the necessary documentation and permits to lawfully possess and care for the numerous animals on her property. Am. Compl. ¶ 14. She was also the victim of a false police report filed by a disgruntled customer. *Id.* ¶ 15. Detective Gulley "typed up and signed a sworn affidavit for a search warrant" based upon the false police report. *Id.* ¶ 19. The Plaintiff alleges that Detective Gulley "had no objectively reasonable basis to believe that a search warrant was needed or necessary." *Id.* ¶ 20. Detective Gulley stated that "he investigated the matters stated therein although he knew he had not conducted an investigation." *Id.* ¶ 48. Detective Gulley also "provided false testimony in [his] Affidavit for Search Warrant, knowing said testimony was false." *Id.* ¶ 62. "The information in the affidavit for search warrant was uncorroborated, uninvestigated and some of which was untrue." *Id.* ¶ 21. The police searched the Plaintiff's home and confiscated her animals pursuant to this search warrant. *Id.* ¶ 25. The police did not determine which, if any, of the animals were abused or neglected. *Id.* ¶ 27. This search warrant was later suppressed by a state trial judge. *Id.* ¶ 50. The Plaintiff was also arrested "based solely on the allegations of the disgruntled purchaser of a kitten." *Id.* ¶ 35. Some of the Plaintiff's animals were euthanized or given away even though she had filed a petition for a temporary restraining order to prevent the disposition of the animals. *Id.* ¶¶ 31–34.

When viewing the alleged facts in the light most favorable to her, a reasonable arresting officer would not believe that the Plaintiff committed the crimes of forgery or animal neglect. *See Driebel*, 298 F.3d at 643. This is because, when the facts are viewed in the light most favorable to her, (1) the Plaintiff lawfully owned the animals she possessed; (2) she was the victim of a false police report; (3) the officers arrested the Plaintiff for forgery and animal neglect based solely on a false police report; (4) a reasonable inference is that the officers knew that the police report was false; and (5) the officers did not determine if any of her animals were abused or neglected. Assuming for the moment that these allegations are true, no reasonable person would believe that she committed a crime. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) ("Neita alleges that he showed up at Animal Control to surrender two dogs, neither of which showed signs of abuse or neglect, and was arrested without any evidence that he had mistreated either dog. If these allegations are true, no reasonable person would have cause to believe that Neita had abused or neglected an animal."). As such, the Plaintiff has stated a claim for false arrest and imprisonment under the laws of the State of Indiana and the laws of the United States. *Fox*, 600 F.3d at 832.

Likewise, when the facts are viewed in the light most favorable to her, (1) the officers acted upon a false police report, and a reasonable inference is that the officers knew that the police report was false; (2) Detective Gulley stated that he had investigated the matters within his affidavit even though he had not conducted an investigation; and (3) the Defendants knowingly provided false testimony when applying for the search warrant. Based upon the facts alleged, a reasonably prudent person would not believe that a search of the Plaintiff's home would have uncovered evidence of a crime. *See Peck*, 317 F.3d at 756. Thus, the Plaintiff has stated a claim for an illegal search and seizure. *See Benner*, 913 F.3d at 647.

Trying to avoid this result, the Defendants argue that there was probable cause both for a search warrant and an arrest based upon the customer's complaint that she purchased a sick kitten from the Plaintiff. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate."). However, as noted above, the Plaintiff alleges that (1) the police report was false, (2) the officers took no further action to investigate the complaint, (3) the officers had no other information to constitute probable cause, (4) the officers intentionally disregarded the truth, and (5) the officers provided false testimony when they sought the search warrant. Based upon the facts alleged, a reasonable inference is that the officers should have been suspicious and investigated the matter further. Accordingly, for the purposes of ruling upon this Motion to Dismiss, the Defendants' argument is rejected at this time.

**B.     Qualified Immunity**

The Defendants also argue that the Defendant officers are entitled to qualified immunity. At this stage of the case, the Court disagrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Kemp v. Liebel*, 877 F.3d 346, 350–51 (7th Cir. 2017) (quoting *Ashcroft v.*

9

*al-Kidd*, 563 U.S. 731, 735 (2011)). A police officer "is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'" *Fleming v. Livingston Cty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). However, "[a] police officer is not entitled to qualified immunity for submitting 'an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements.'" *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (quoting *Lawson v. Veruchi*, 637 F.3d 699, 704 (7th Cir. 2011)).

As discussed above, when viewing the allegations in the light most favorable to her, the officers arrested the Plaintiff based solely on a false police report, and a reasonable inference is that they knew the police report was false. Moreover, the Plaintiff could lawfully possess all of the animals on her property. Likewise, based upon the facts alleged, the Defendants knowingly provided false testimony when applying for the search warrant. Based upon these allegations, the Court finds that the officer Defendants are not entitled to qualified immunity at this stage of the case. *Neita*, 830 F.3d at 499 (holding that officers were not entitled to qualified immunity at the pleadings stage when the plaintiff "alleged that the officers never received a complaint of animal abuse or neglect, or alternatively, that they knew that any such complaint was false"); *Olson*, 784 F.3d at 1100 ("The plaintiffs' allegations allow a reasonable inference that [Officers] Sherrick and Shaw provided false information to obtain the warrant and so are not entitled to qualified immunity."); *see also Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) ("Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not

dismissed under Rule 12(b)(6) on qualified immunity grounds." (internal quotation marks omitted)). Accordingly, the Court denies the motion based on qualified immunity at this time.

C.     **Failure to State a Claim for Illegal Conspiracy**

The Defendants argue that the Plaintiff has failed to state a claim for illegal conspiracy. In response, the Plaintiff agrees to voluntarily dismiss this claim. Accordingly, Count VIII of the Amended Complaint is dismissed.

D.     **Detective Glenn Gulley and the Indiana Tort Claims Act**

The Defendants argue that Detective Glenn Gulley should be completely dismissed from this suit pursuant to the Indiana Tort Claims Act (ITCA). Specifically, the Defendants argue that the Plaintiff failed to comply with the requirements of Indiana Code § 34-13-3-5(c). At this stage of the case, the Court will not dismiss Detective Gulley based on ITCA immunity.

The ITCA provides that "[a] lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c). In this case, the Plaintiff alleges that Detective Gulley made statements "purposely and maliciously and with the intent of harming [her] reputation." Am. Compl. ¶ 94. Such allegations would seemingly purport with the requirements of Indiana Code § 34-13-3-5(c), and the Defendants *only argue* that the Plaintiff failed to comply with this statutory requirement. *See Reed v. White*, 103 N.E.3d 657, 660 (Ind. Ct. App. 2018) (concluding that the plaintiff complied with Indiana Code § 34-13-3-5(c) when the face of the complaint alleged criminal misconduct). Furthermore, the Plaintiff argues that she complied with Indiana Code § 34-13-3-5(c) in making this allegation, and the Defendants fail to reply to this argument.

11

The Plaintiff also alleges a claim of wrongful arrest or imprisonment, and she argues that this is an exception to the immunity provided in the ITCA. *See* Ind. Code § 34-13-3-3(8) (providing that a government employee acting within the scope of his employment is not liable if a loss results from the enforcement of a law, unless the act of enforcement constitutes false arrest or false imprisonment); *see also Clevenger v. City of N. Webster Police Dep't*, No. 1:15-CV-337, 2016 WL 3537193, at *3 (N.D. Ind. June 28, 2016) (commenting that it "appears that false imprisonment and false arrest claims 'fall outside the parameters of the immunity conferred by the ITCA'" (quoting *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002))). The Defendants do not respond to Plaintiff's reliance on Indiana Code § 34-13-3-3(8).

Thus, the Defendants have not demonstrated that the ITCA requires that the state law claims be dismissed against Detective Gulley.[2] As for the federal claims, as noted above, the Plaintiff has stated claims against Detective Gulley under § 1983. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."). As such, even if the state law claims were dismissed, the federal claims remain pending against Detective Gulley because the ITCA does not apply to the § 1983 claims. *See Felder v. Casey*, 487 U.S. 131, 141 (1988); *Terry v. Calhoun*, No. 1:17-CV-440, 2018 WL 6308998, at *4 (N.D. Ind. Dec. 3, 2018) ("Indiana's Tort Claims Act does not apply to § 1983 actions."); *see also Cantrell v. Morris*, 849 N.E.2d 488, 506 (Ind. 2006) ("By reason of the Supremacy Clause and principles of federalism, to the extent the Federal Constitution prohibits

---

[2] To clarify, the Defendants do not argue that specific claims against Detective Gulley should be dismissed pursuant to the Indiana Tort Claims Act. Instead, the Defendants only argue that complete dismissal of Detective Gulley is required under the Act. Accordingly, the Court does not address whether certain individual state law claims should be dismissed against Detective Gulley.

conduct by state officers, state laws are ineffective to shield the officers from federal remedies. Specifically, the ITCA does not apply to claims based on 42 U.S.C. § 1983." (citations omitted)).

**E.     The Dismissal of the City of Lake Station Police Department**

The Defendants argue that the City of Lake Station Police Department is not a proper defendant in this action and should therefore be dismissed. *See Jones v. Bowman*, 694 F. Supp. 538, 544 (N.D. Ind. 1988). Based upon this argument, the Plaintiff has agreed to voluntarily dismiss the Lake Station Police Department as a defendant. Accordingly, the Court dismisses the City of Lake Station Police Department as a defendant in this case.

**F.     Failure to State a Claim for Respondeat Superior**

The Defendants argue that the Plaintiff fails to state a claim for respondeat superior. The Court disagrees.

Under the Indiana state law "doctrine of respondeat superior, vicarious liability will be imposed upon an employer where an employee has inflicted harm while acting 'within the scope of his employment.'" *Harrison Cty. Sheriffs Dep't v. Ayers*, 70 N.E.3d 414, 417 (Ind. Ct. App. 2017) (quoting *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008)). The State of Indiana has recognized this doctrine for over a century. *See Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018). In contrast, for federal civil rights claims, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Johnson v. Cook County*, 526 F. App'x 692, 697 (7th Cir. 2013) (affirming the district court's dismissal of a *Monell* claim and reviewing the sufficiency of state claims based on respondeat superior).

Regarding her state law claims of assault and battery and of intentional infliction of emotional distress, the Plaintiff alleges in Counts V and VII of the Amended Complaint that the

13

City of Lake Station is liable for the actions of Detective Gulley and of unknown police officers under a theory of respondeat superior. *See* Am. Compl. Counts V and VII. In support, as relevant to these Counts, the Plaintiff alleges that Detective Gulley was at all relevant times acting within the scope of his employment as a police officer and detective for the City of Lake Station. *Id.* ¶ 11. Thus, the Plaintiff has sufficiently alleged claims of respondeat superior under Indiana state law.

However, the Defendants argue that "[*r*]*espondeat superior* is unavailable as a basis for imposing liability on the supervisors of state actors who have violated the Constitution under Section 1983." Defs.' Mem. Supp. Partial Mot. to Dismiss, p. 8, ECF No. 27. The Defendants are correct that respondeat superior liability is unavailable for federal constitutional claims brought under § 1983. *See Monell*, 436 U.S. at 961. However, the Plaintiff is asserting a theory of respondeat superior based on her state law tort claims—the Plaintiff is not asserting a theory of respondeat superior based on her § 1983 claims. Accordingly, the Defendants' argument concerning respondeat superior is without merit, and the Court denies the motion to dismiss the respondeat superior claim in Counts V and VII.

**G.     Failure to State a Claim for a Procedural Due Process Violation**

The Plaintiff argues that her due process rights were violated when some of her animals were given away or euthanized prior to a hearing on her petition for a temporary restraining order. The Defendants argue that the Plaintiff waived this issue by failing to request a hearing to determine the disposition of her animals pursuant to Indiana Code § 35-46-3-6(c). The Court rejects the Defendants' argument.

"The 14th Amendment protects persons from state governmental deprivations of life, liberty, or property without due process of law." *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cty.,*

*Ind.*, 57 F.3d 505, 512 (7th Cir. 1995). "A procedural due process violation occurs when (1) conduct by someone acting under the color of state law (2) deprives the plaintiff of a protected property interest (3) without due process of law." *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th Cir. 2011) (citing *Germano v. Winnebago Cty., Ill.*, 403 F.3d 926, 927 (7th Cir. 2005)).

In relevant part, the State of Indiana provides for the impoundment and disposition of animals as follows:

> (c) The owner of an animal that has been impounded under this section may prevent disposition of the animal by an animal shelter that is caring for the animal by posting, not later than ten (10) days after the animal has been impounded, a bond with the court in an amount sufficient to provide for the animal's care and keeping for at least thirty (30) days, beginning from the date the animal was impounded. . . . If the owner has paid a bond under this subsection, the animal shelter may euthanize an animal if a veterinarian determines that an animal is suffering extreme pain.
>
> (d) If the owner requests, the court having jurisdiction of criminal charges filed under this chapter or IC 15-20-1 shall hold a hearing to determine whether probable cause exists to believe that a violation of this chapter or IC 15-20-1 has occurred. If the court determines that probable cause does not exist, the court shall order the animal returned to its owner, and the return of any bond posted by its owner.

Ind. Code § 35-46-3-6(c), (d).

Turning to this case, the Defendants only argue that the Plaintiff waived her right to a hearing. Accordingly, for the purposes of ruling upon this Motion, the Court will not address whether there was state action or whether the Plaintiff had a protected property interest. Also, the new arguments raised for the first time in the Defendants' reply brief are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011).

The Defendants seized the Plaintiff's animals on January 21, 2016. *See* Am. Compl. ¶ 25. The Defendants placed the animals at various animal shelters. *Id.* ¶ 29. On February 2, 2016, more than ten days after her animals were seized, the Plaintiff filed a petition for an emergency

15

temporary restraining order. *Id.* ¶ 31. However, prior to any hearing being held, several of her animals were euthanized and other animals were given away to new owners. *Id.* ¶¶ 33–34.

Certainly, the Plaintiff's petition for a temporary restraining order does not comport with Indiana Code § 35-46-3-6(c) because it was filed more than ten days after her animals were taken and she does not allege that she posted bond. However, Indiana Code § 35-46-3-6(d) provides that "[i]f the owner requests, the court having jurisdiction of criminal charges filed under this chapter or IC 15-20-1 shall hold a hearing to determine whether probable cause exists to believe that a violation of this chapter or IC 15-20-1 has occurred." Ind. Code § 35-46-3-6(d). Furthermore, "[i]f the court determines that probable cause does not exist, the court shall order the animal returned to its owner, and the return of any bond posted by its owner." *Id.*

When the facts are viewed in the light most favorable to her, the Plaintiff's petition for a temporary restraining order could be construed as a request for a hearing pursuant to Indiana Code § 35-46-3-6(d). Alternatively, based upon the filing of an emergency temporary restraining order, the Plaintiff did not waive her right to a hearing on the disposition of her animals. As such, the Court rejects the Defendants' waiver argument at this time.

## CONCLUSION

Based on the foregoing, the Defendants' Partial Motion to Dismiss [ECF No. 26] is GRANTED IN PART and DENIED IN PART. Defendant Lake Station Police Department is DISMISSED. Count VIII of the Plaintiff's Amended Complaint [ECF No. 23] is DISMISSED.

SO ORDERED on January 24, 2020.

                                        s/ Theresa L. Springmann
                                        CHIEF JUDGE THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT